1

HON. ROBERT J. BRYAN

2

3

4

5

6

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

7

8

KENNETH ALVAREZ,

NO. 3:16-cv-5111-RJB

9

Plaintiff,

10

v.

**SEIU 775'S MOTION FOR PROTECTIVE ORDER**

11

GOVERNOR JAY INSLEE, *et al.*,

**NOTE DATE: OCT. 21, 2016**

12

Defendants.

13

**Introduction**

14

The Court denied the parties' proposed Stipulated Protective Order without prejudice

15

because the parties had failed to show sufficient justification for the inclusion of three of the

16

proposed eight covered categories of "confidential information": (1) the identity and contact

17

information of each person who has conducted, led, and/or spoken at, or will conduct lead and/or

18

speak at SEIU 775 presentations; (2) the names and contact information of Individual Providers;

19

and (3) the names, dates, times, and locations of basic and continuing education classes. Dkt. No.

20

41. Defendant SEIU 775 now moves pursuant to Fed. R. Civ. P. 26(c) and LR 7(d)(2)(B) for a

21

protective order that is substantively identical to the parties' original proposed Stipulated

22

Protective Order save that under category (1) SEIU 775 seeks only to protect information

23

described above as it pertains to Individual Providers.

24

MOTION FOR PROTECTIVE ORDER-1
CASE NO. 3:16-cv-5111-RJB

FRANK FREED SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

**Good Cause Exists for the Protection of the Names and Contact Information of Individual Providers Including Those Who Make SEIU 775 Presentations**

Fed. R. Civ. P. 26(c)(1) provides that upon motion a Court may grant an order to protect any person from annoyance or oppression. The Court should enter an order deeming the names and contact information of all Individual Providers ("IPs") disclosed in discovery in this action to be "confidential information" so as to protect IPs from annoyance and oppression by the Freedom Foundation, which represents plaintiff Alvarez in this action.[1]

The Freedom Foundation's oft-stated goal is to "defund," "destroy", and "bankrupt" SEIU 775. Glickman Dec. ¶¶ 15-16 and Attachments B & C thereto. The Freedom Foundation has called SEIU 775 and other public sector unions "a rampant disease that is destroying our state." See Attachment B to Glickman Dec. The Freedom Foundation has touted its efforts to turn IPs against SEIU 775 and entice them to cut-off their financial support. See Attachments B & C to Glickman Dec. When the Freedom Foundation has obtained the names and contact information of IPs, SEIU 775 has received hundreds of complaints from IPs about the Freedom Foundation's harassment. Glickman Dec. at ¶¶ 6, 8, 10. The Freedom Foundation has on at least two occasions paid individuals thousands of dollars to obtain lists of IP names. See *infra*.

On July 29, 2014, the Freedom Foundation requested a list of all home-care aides, including names, email addresses, phone numbers, and mailing addresses from the Washington Department of Health. In August 2014, without giving notice to SEIU 775, the Department of Health provided a list containing the first, middle and last name and email address of all individuals credentialed or applying for a credential of certified home care aide in the State of Washington. A number of the people on this list are IPs. Glickman Dec. ¶ 5.

---

[1] Under RCW 42.56.250 and section 5.2 of the IP collective bargaining agreement ("CBA"), the residential contact information (addresses, home and cell phone numbers and email addresses) for IPs is exempt from public disclosure. Declaration of Adam Glickman (Oct. 13, 2016) ("Glickman Dec.") ¶ 4 and Attachment A thereto.

MOTION FOR PROTECTIVE ORDER-2
CASE NO. 3:16-cv-5111-RJB

FRANK FREED SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

1         In May 2015, the Union started receiving phone calls and other contact from bargaining

2    unit members reporting having received emails, letters, home visits and phone calls from the

3    Freedom Foundation. Members were very concerned about the Freedom Foundation obtaining

4    their personal contact information. *Id.* at ¶ 6. The Union investigated and learned that the

5    Department of Health had provided Freedom Foundation with a list of certified home care aides

6    in August 2014. An analysis revealed that Freedom Foundation had used the DOH list to also

7    learn the home addresses and phone numbers of IPs and were now contacting them. The Union

8    received around 50-75 complaints based on the May Freedom Foundation blitz. *Id.* at ¶ 7.

9         Beginning in February 2016 the Union started receiving phone calls and other contact

10   from IP bargaining unit members reporting having received emails, letters, home visits and

11   phone calls from the Freedom Foundation. *Id.* at ¶ 8. Again, the IPs were very concerned about

12   the Freedom Foundation obtaining their personal contact information. The Union investigated

13   and determined that the list Freedom Foundation obtained was a very specific list of members in

14   the Union's Northwest Territory and could only have been obtained from a former employee of

15   SEIU 775.[2] Between February and April 2016, the Union received 50-75 additional complaints

16   from IPs based on the Freedom Foundation's February blitz. *Id.* at ¶ 9.

17        Beginning in mid-May 2016, the Union started receiving even more phone calls and

18   other contact from IP bargaining unit members who had received emails, letters, home visits

19   and phone calls from the Freedom Foundation. Again IPs were very concerned about the

20   Freedom Foundation's obtaining of their personal contact information. The Union investigated

21   and determined that the list Freedom Foundation had obtained contained the entire IP

22

23   ───────────────

[2] In June 2016 SEIU 775 filed a breach of contract suit against former employee, Chad Elbandagji, for giving the Freedom Foundation the membership list for SEIU 775's Northwest Territory. *SEIU 775 v. Elbandagji*, No.16-2-

24   13095-0 SEA. Glickman Dec. ¶ 11.

MOTION FOR PROTECTIVE ORDER-3          FRANK FREED SUBIT & THOMAS LLP
CASE NO. 3:16-cv-5111-RJB             Suite 1200 Hoge Building, 705 Second Avenue
                                     Seattle, Washington 98104-1798
                                        (206) 682-6711

1    bargaining unit. From May 2016 to present, the Union received 350-375 additional complaints

2    from members based on the Freedom Foundation's May 2016 blitz. *Id.* at ¶ 10.

3         Maxford Nelsen testified on behalf of the Freedom Foundation in a deposition on

4    September 9, 2016 in *SEIU 775 v. Evergreen Freedom Foundation*, No. 16-2-12945-5 SEA.

5    During that deposition Mr. Nelsen admitted that the Freedom Foundation had paid an individual

6    $2,000 for a list of IP names and contract information resembling those from the Union's

7    Northwest Territory that the Foundation had used in its February 2016 blitz. Glickman Dec. ¶

8    12; Attachment C to Declaration of Charissa Raynor (Oct. 12, 2016) ("Raynor Dec.") at 17:24-

9    18:9, 47:8-11. Freedom Foundation lawyers James Abernathy and David Dewhurst facilitated

10   the exchange of IP names and contact information for money. Attachment C to Raynor Dec. at

11   18:24-19:2. They are both counsel of record for Alvarez. Dkt. No. 1.

12        Mr. Nelsen also testified the Evergreen Freedom Foundation ("EFF") had paid an

13   individual $12,000 for two databases containing IP names and contact information that was

14   unlawfully obtained from the Service Employees International Union Northwest Healthcare

15   Training Partnership ("Training Partnership"). Attachment C to Raynor Dec. at 59:22-24, 86:2-

16   87:2 & corrections thereto. The two databases each contained lists of the names and contact

17   information for approximately 42,000 IPs. *Id.* at 59:22-24. The database fields could only have

18   come from the Training Partnership. Raynor Dec. at ¶ 19. Mr. Nelson testified that Messrs.

19   Abernathy and Dewhurst arranged to pay a confidential source $12,000 for the databases.

20   Attachment C to Raynor Dec. at 58:9-59:23, 62:3, 106:16-24, 110:1-5 & corrections thereto.

21   The Training Partnership reported the theft to the police and filed a lawsuit against the

22   Evergreen Freedom Foundation: *SEIU Healthcare Northwest Training Partnership v.*

23   *Evergreen Freedom Foundation*, No. 16-2-20264-1. Raynor Dec. ¶¶ 16-17.

24

MOTION FOR PROTECTIVE ORDER-4
CASE NO. 3:16-cv-5111-RJB

1      Given what the lengths that Freedom Foundation has gone to obtain lists of IP names

2   and contact information, and its harassment of IPs whose names it has obtained in the past,

3   SEIU 775 believes that the Freedom Foundation will use the IP names and contact information

4   Alvarez has requested in discovery for reasons other than prosecuting the claim he has brought

5   against SEIU 775 in this action unless those names and contact information are placed under the

6   aegis of a protective order. Glickman Dec. ¶ 13. Therefore, the Court should grant SEIU 775's

7   motion to include IP names and contact information within the definition of "Confidential

8   Information" under the protective order, including those IPs who have conducted, led, and/or

9   spoken at, or will conduct lead and/or speak at SEIU 775 presentations.

10      **Good Cause Exists for the Protection of the Names, Dates, Times, and Locations of
        Basic and Continuing Education Classes**

11
        The Training Partnership conducts basic training and continuing education classes for

12   IPs. Raynor Dec. ¶¶ 2, 9. The Training Partnership functions as a private school and is a tax-

13   exempt as a tax exempt charitable educational trust, pursuant to IRC §501(c)(3). *Id.* at ¶¶ 3-4.

14   The Training Partnership has an independent Board of Trustees. *Id.* at ¶¶ 4-6. The Training

15   Partnership is also a multi-employer welfare plan under ERISA, so that it may receive tuition for

16   home care workers in the form of contributions from participating employers. *Id.* at ¶ 4. The

17   State does not license or directly regulate the Training Partnership. The State does not control the

     scheduling and location of Training Partnership classes. The State does not review or approve

18   the Training Partnership's class schedule. *Id.* at ¶ 7.

19      From its inception, the Trustees of the Training Partnership have determined that all of

20   the information used by the Training Partnership is confidential. Since 2009 the Training

21   Partnership's Trust Agreement has included a strict Confidentiality Policy to which all

22   participating employers, Trustees and Training Partnership staff agree to be bound. Under the

23   Trust Agreement as well as the relevant CBAs, the State of Washington agreed to abide by the

     Training Partnership's Confidentiality Policy. *Id.* at ¶ 8.

24

MOTION FOR PROTECTIVE ORDER-5
CASE NO. 3:16-cv-5111-RJB

The titles and location of the Training Partnership classes for IPs have significant commercial value and are proprietary. When the Training Partnership initially established its classes, it purchased and used a proprietary algorithm to determine the optimal location of classes. The Training Partnership staff incorporated key points from that algorithm into its current methodology for siting classes, based in part on student demand. These locations have commercial value to the Training Partnership – other community instructors here in Washington as well as schools providing similar services in states in which the Training Partnership would like to expand its services. Similarly, the titles of the classes also provide insight into proprietary training approach and strategies. *Id.* at ¶ 10.

The Training Partnership's classes for IPs are also proprietary in nature. There are many competing "community instructors" that would benefit from the information contained in the documents and/or from secretly attending the Training Partnership's classes. Many other non-governmental organizations provide the same or similar training to that of the Training Partnership. *Id.* at ¶ 11.

Fed. R. Civ. P. 26(c)(1)(G) authorizes a court to issue a protective order requiring that confidential research, development, or commercial information not be revealed or revealed only in a specified manner. SEIU 775 requests the Court to adopt the proposed protective order permitting revelation of the Training Partnership's proprietary information regarding the names, dates, times, and locations of basic and continuing education classes subject to the restrictions on "confidential information" provided by that order.

A court may also issue an order under Fed. R. Civ. P. 26(c) to protect the privacy and security of any person. *Mehl v. Blanas*, 241 F.R.D. 653, 658-59 (E.D. Cal. 2007). The Training Partnership fears that public disclosure of its class schedules, locations and times could create a significant security concern for students attending these classes and their instructors. Raynor Dec. ¶ 12. If the list of classes, their location and timing were released, the Training Partnership might be forced to hire security personnel to support instructors and students at those classes. *Id.*

MOTION FOR PROTECTIVE ORDER-6
CASE NO. 3:16-cv-5111-RJB

FRANK FREED SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

The Training Partnership's concerns regarding safety and privacy are not just theoretical. EFF admitted to receiving secretly recorded audio and video tape of the Training Partnership's classes. Attachments A & B to Raynor Dec. Without permission from the Training Partnership, the students or instructors in the secretly recording, EFF's in-house litigation counsel, James Abernathy—who also represents Alvarez—disseminated the recording on its website and newsletter. Raynor Dec. at ¶ 12. The Training Partnership is concerned that if Alvarez's counsel receive information about the date and location of its classes, its students and instructors could be subjected to continued invasions of their privacy and threats to their security absent the entry of a protective order covering this information. *Id.*

A King County Superior Court judge has expressly found that disclosure of Training Partnership class locations would cause "actual and substantial harm" to the Training Partnership, its instructors, and students. *SEIU Healthcare Training Northwest Training Partnership v. Washington Dep't of Social & Health Services & Freedom Foundation*, No. 15-2-29484-9 SEA (Order Granting Motion Preliminary Injunction, Jan 11, 2016), Exhibit A to Raynor Dec., at p. 6. In another case, a court entered a protective order regarding information about Training Partnership classes. *Freedom Foundation v. SEIU Healthcare Northwest Training Partnership,* No. 16-2-08924-1 SEA (Order on Defendant's Motion for Protective Order, July 18, 2016), attached as an Appendix.

For all these reasons, good cause exists to include the names, dates, times, and locations of basic and continuing education classes provided to IPs within the rubric of "Confidential Information" under the protective order.

**Conclusion**

The Court should enter the proposed protective order accompanying this motion.

MOTION FOR PROTECTIVE ORDER-7
CASE NO. 3:16-cv-5111-RJB

FRANK FREED SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

1

2        RESPECTFULLY SUBMITTED this 13th day of October 2016.

3

4                                          **FRANK FREED SUBIT & THOMAS LLP**

5                                          By: /s/  Michael C. Subit
                                           Michael C. Subit, WSBA # 29189
6                                          705 Second Avenue, Suite 1200
                                           Seattle, WA  98104
7                                          206-682-6711
                                           msubit@frankfreed.com
8                                          Attorneys for Defendant SEIU 775

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MOTION FOR PROTECTIVE ORDER-8
CASE NO. 3:16-cv-5111-RJB

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on October 13, 2016, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4  following:

5          **Attorneys for Plaintiff:**

6          Stephanie Olson
           James G. Abernathy
7          David M.S. Dewhirst
           c/o Freedom Foundation
8          P.O. Box 552
           Olympia, WA 98507
9          Telephone: (360) 956-3482
           Fax: (360) 352-1874
10         Email: solson@myfreedomfoundation.com
           JAbernathy@myfreedomfoundation.com
11         DDewhirst@myfreedomfoundation.com

12         Milton L. Chappell
           c/o National Right to Work Legal Defense Foundation, Inc.
13         8001 Braddock Road, Suite 600
           Springfield, VA  22151
14         Telephone:  (703) 770-3329
           Fax:  (703) 321-9319
15         Email:  mlc@nrtrw.org

16
           **Attorneys for Defendants Patricia Lashway**
17         **and Jay Inslee:**

18           Alicia O. Young
             Assistant Attorney General
19           Office   of   the   Attorney
             General
20           Torts Division
             P.O. Box 40126
21           Olympia, WA 98504-0126
             Phone: (360) 586-6300
22           Fax: (360) 586-6655
             aliciaO@atg.wa.gov

23

24
MOTION FOR PROTECTIVE ORDER-9                          FRANK FREED SUBIT & THOMAS LLP
CASE NO. 3:16-cv-5111-RJB                              Suite 1200 Hoge Building, 705 Second Avenue
                                                       Seattle, Washington 98104-1798
                                                       (206) 682-6711

1

Albert H. Wang
Assistant Attorney General

2

Labor & Personnel Division
P.O. Box 40145

3

Olympia, WA 98504
(360) 586-0299

4

albertw@atg.wa.gov

5

and I hereby certify that I have mailed by United States Postal Service the document to the

6

following non CM/ECF participants:  None.

7

8

*/s/ Michael C. Subit*
Michael C. Subit, WSBA #29189

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MOTION FOR PROTECTIVE ORDER-10
CASE NO. 3:16-cv-5111-RJB

# APPENDIX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Hon. Beth M. Andrus
Noted for Consideration:  July 12, 2016
Without Oral Argument

IN THE SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit organization, | NO. 16-2-08924-1 SEA |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER |
| SEIU HEALTHCARE NORTHWEST TRAINING PARTNERSHIP, a 501(c)(3), | |
| Defendant. | |

This matter came before this Court on Defendant's Motion for Protective Order. Plaintiff Freedom Foundation was represented by Stephanie D. Olson, and James G. Abernathy.  Defendant SEIU Healthcare NW Training Partnership was represented by Eleanor Hamburger and Richard E. Spoonemore, Sirianni Youtz Spoonemore Hamburger.

The Court reviewed and considered the pleadings and record herein, including:

- Defendant's Motion for Protective Order;
- Declaration of Eleanor Hamburger in support of Motion for Protective Order;
- Response of the Freedom Foundation to Defendant's Motion for Protective Order and any declarations and exhibits submitted in support of the responsive briefing, if any;

PROTECTIVE ORDER – 1

Sirianni Youtz
Spoonemore Hamburger
999 Third Avenue, Suite 3650
Seattle, Washington 98104
Tel. (206) 223-0303   Fax (206) 223-0246

- Defendant's Reply in support of its Motion for Protective Order and any declarations and exhibits submitted in support of the reply, if any; and

- Some of the materials submitted by Defendant in support of its motion for summary judgment, to the extent cited in the motion for a protection order;

Based on the foregoing, the Court finds good cause to set limits on the use of produced in discovery and the use of any "confidential" designation by either party wishes, pursuant to CR 26(c).

At this stage of the proceedings, there is a bona fide dispute as to whether the records Plaintiff seeks from the Defendant are public or private records. If Plaintiff prevails, most of the documents the Defendant now seeks to keep confidential would probably be public records, the dissemination or use of which by the Plaintiff would be permissible. If, however, the Defendant prevails, the Plaintiff will have no legal right to retain any of the Defendant's documents that are not publicly available. The Defendant thus understandably wishes to preserve the confidential nature of its records through a protection order until such time that the Court rules on the underlying Public Records Act claims.

Plaintiff does not dispute that a protective order may be appropriate. But Plaintiff is concerned that the Defendant's proposed stipulated protection order contains what it calls a "catch-all" provision that would allow the Defendant to designate as "confidential" anything it wants to so designate. The Plaintiff refused to agree to the inclusion of the following category of documents in the list of documents that the Defendant can designate as "confidential:"

> Documents containing personal, financial, medical or other information subject to a right of privacy and/or deemed confidential by the SEIU Healthcare NW Training Partnership Board of Trustees.

PROTECTIVE ORDER – 2

Proposed Stipulated Protective Order, page 2. The Plaintiff's concerns are well-founded, given that the SEIU HealthCare NW Training Partnership Confidentiality Policy, attached as Appendix B to the Hamburger Declaration declares that "all Trust materials, discussion, meetings, information and documents (whether written or oral) ("materials") are confidential." Under this policy, there isn't a single document in the Defendant's possession that falls outside of the Defendant's definition of "Confidential Materials," unless (as occurred when the Defendant filed its summary judgment motion), the Defendant chooses to remove the confidentiality restrictions on the materials it files with the Court. The Court agrees with the Plaintiff that the Defendant's definition of "Confidential Material" is inappropriately broad.

The Court finds that the parties' respective interests can be protected by making two alternations to the Defendant's proposed stipulated protective order. First, the definition of "Confidential Materials" will be narrowed to include only those materials or documents protected by the Confidentiality Policy but only **if** that information has not been disseminated to anyone other than the organization's Board of Trustees and/or its executive management. Second, the Court will disallow either party from using **any** information produced in discovery (whether confidential or not) for any purpose other than this litigation. If material is designated "confidential," then further restrictions on its use and handling will be imposed.

To balance the interests of both parties, the Court hereby enters the following protective order:

1.     <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection is warranted. Consistent with CR 26(c), good cause is shown to protect the confidential information of the

PROTECTIVE ORDER – 3

Training Partnership. This order does not confer blanket protection on all disclosures or responses to discovery. The protection provided by this order is designed to facilitate the exchange of information in discovery, while at the same time, limit the parties' confidential information from public disclosure and public use during the pre-trial phase of litigation. It applies only to the limited information or items that are entitled to be treated as "confidential" under the applicable legal principles and does not presumptively entitle parties to file confidential information under seal.

2.    "DISCOVERY MATERIAL"

"DISCOVERY MATERIAL" means any answers to requests for admission, answers to interrogatories, responses to requests for production (including documents produced), and deposition testimony obtained in this lawsuit by either party.

3.    "CONFIDENTIAL" MATERIAL

3.1    "CONFIDENTIAL MATERIAL" in the discovery process shall include the following documents and tangible things produced or otherwise exchanged:

- Protected health information ("PHI"), as defined in 45 C.F.R. §160.103 and §164.501, which includes, but is not limited to, health information, including demographic information, relating to either (a) the past, present, or future physical or mental condition of an individual; (b) the provision of care to an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual;

- Personal information in files maintained for public assistance recipients (RCW 42.56.230(1); RCW 74.04.060);

- Records relating to mental health treatment (RCW 71.05.390; 71.34.340);

- Credit card numbers, debit card numbers, electronic check numbers, card

PROTECTIVE ORDER – 4

expiration data, or bank or other financial account numbers (RCW 42.56.230(5));

- Personal information about agency employees, appointees or elected officials that would violate the right to privacy (RCW 42.56.230(3));

- Educational and training information protected under FERPA;

- Other material protected by federal or state statute or regulation or court rule;

- Documents or material containing a specific individual's personal, financial, or medical information; and

- Documents deemed confidential by the SIEU Healthcare NW Training Partnership pursuant to its Confidentiality Policy but only if such documents have not been disseminated to anyone other than the organization's Board of Trustees and/or executive management.

3.2.   SCOPE OF PROTECTION OF CONFIDENTIAL MATERIAL

The protections conferred by this order on Confidential Material (as defined above) also include (1) any information copied or extracted from Confidential Material; (2) all copies, excerpts, summaries, or compilations of Confidential Material; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal Confidential Material.  However, the protections conferred by this order do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

4.   ACCESS TO AND USE OF DISCOVERY AND CONFIDENTIAL MATERIAL

4.1   Use of Discovery Material.  Neither party may use Discovery Material, whether or not designated as Confidential Material, for any purpose other than prosecuting, defending, or attempting to settle this litigation.

PROTECTIVE ORDER – 5

4.2 <u>Disclosure of Confidential Material</u>.   Unless otherwise ordered by the Court, a party receiving material designated "Confidential" by the producing party may only disclose such material to:

(a) the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b) the officers, directors, and employees (including in house counsel) of the receiving party to whom disclosure is reasonably necessary for this litigation;

(c) experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court, court personnel, and court reporters and their staff;

(e) copy or imaging services retained by counsel to assist in the duplication of Confidential Material, provided that counsel for the party retaining the copy or imaging service instructs the service not to disclose any Confidential Material to third parties and to immediately return all originals and copies of any Confidential Material;

(f) witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the designating party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Confidential Material must be separately bound by the court reporter upon request by the designating party and may not be disclosed to anyone except as permitted under this order;

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) mediators or other persons involved in an alternate dispute resolution process agreed to by the parties; and

PROTECTIVE ORDER – 6

(i) any other person agreed to in writing by all parties.

4.3     Filing Confidential Material.     Before filing Confidential Material or discussing or referencing such material in court filings, the filing party shall confer with the designating party to determine whether the designating party will remove the "Confidential" designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order to seal is warranted.

GR 15 and LGR 15 set forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the Court to file material under seal and/or redact materials. The designation of information or materials as "Confidential" does not impact the Court's analysis as to whether information or materials may be sealed and/or redacted pursuant to GR 15 and LGR 15.

5.     DESIGNATING CONFIDENTIAL MATERIAL

5.1     Exercise of Restraint and Care in Designating Confidential Material.  Each party that designates information or items as Confidential under this order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The designating party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.     Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) expose the designating party to sanctions.   If it comes to a designating party's attention that information or items that it designated for protection do not qualify for protection, the

PROTECTIVE ORDER – 7

designating party must promptly notify all other parties that it is withdrawing the mistaken designation.

     5.2    <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this agreement (*see*, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or ordered, disclosure of discovery material that qualifies for protection under this agreement must be clearly so designated before or when the material is disclosed or produced.

     (a) <u>Information in documentary form</u>:  (e.g., paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings) the designating party must affix the word "CONFIDENTIAL" to each page that contains Confidential Material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

     (b) Testimony given in deposition or in other pretrial or trial proceedings: the parties must identify on the record, during the deposition, hearing, or other proceeding, all protected testimony, without prejudice to their right to so designate other testimony after reviewing the transcript.  Any party or non-party may, within fifteen days after receiving a deposition transcript, designate portions of the transcript, or exhibits thereto, as "CONFIDENTIAL."

     (c) Other tangible items:  the producing party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the word "CONFIDENTIAL."  If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

PROTECTIVE ORDER – 8

Sirianni Youtz
Spoonemore Hamburger
999 Third Avenue, Suite 3650
Seattle, Washington 98104
Tel. (206) 223-0303   Fax (206) 223-0246

5.3   <u>Inadvertent Failures to Designate</u>.   If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

6.   <u>CHALLENGING CONFIDENTIAL DESIGNATIONS</u>

6.1   <u>Timing of Challenges</u>.   Any party may challenge a designation of "Confidential" information at any time.   Unless a prompt challenge to a designating party's "Confidential" designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a party does not waive its right to challenge a "Confidential" designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2   <u>Meet and Confer</u>.   The parties must make every attempt to resolve any dispute regarding "Confidential" designations without court involvement.   Any motion regarding "Confidential" designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action.   The certification must list the date, manner, and participants to the conference.   A good faith effort to confer requires a face-to-face meeting or a telephone conference.

6.3   <u>Judicial Intervention</u>.   If the parties cannot resolve a challenge without court intervention, the designating party may file and serve a motion to retain the "Confidential" designation under CR 26(c) (and in compliance with GR 15, if applicable). The burden of persuasion in any such motion shall be on the designating party.

PROTECTIVE ORDER – 9

Frivolous motions or challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the non-prevailing party to sanctions. All parties shall continue to maintain the material in question as confidential until the court rules on the challenge.

7.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party learns that, by inadvertence or otherwise, it has disclosed Confidential Material to any person or in any circumstance not authorized under this agreement, the receiving party must immediately (a) notify in writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the protected material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this agreement, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

8.   INADVERTENT PRODUCTION OF PRIVILEGED OR PROTECTED MATERIAL

When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, including the right to be designated as "Confidential," the obligations of the receiving parties are those set forth in CR 26(b)(6).

9.   TERMINATION AND RETURN OF DOCUMENTS

Within 60 days after the termination of this action, including all appeals, each receiving party must return all Confidential Material to the producing party, including all copies, extracts and summaries thereof. Alternatively, the parties may agree upon appropriate methods of destruction.

Notwithstanding this provision, counsel are entitled to retain one archival copy of all documents filed with the court, trial, deposition, and hearing transcripts,

PROTECTIVE ORDER – 10

correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain private material.

The protections imposed by this order shall remain in effect until a designating party agrees otherwise in writing or a court orders otherwise.

10.   <u>NO ADMISSIONS OR ADJUCIATION ON THE MERITS</u>.

This Protective Order is for the purposes of facilitating discovery in this public records act litigation.  It shall not be construed as an admission or concession in any manner by either party that information and materials labelled "Confidential" for discovery purposes only, are ultimately public or private information and materials. Specifically, the production of discovery by the Training Partnership in this litigation shall not be viewed as an admission or concession that the Freedom Foundation is entitled to the Training Partnership's private records or that it is a "public agency."  The Freedom Foundation's maintenance of the Training Partnership's information and materials labelled "Confidential" pursuant to this Protective Order, shall not be construed as an admission or concession that the Training Partnership is not a "public agency" or that its records are private.  This order shall not be considered to be an adjudication by this Court that any information and materials labelled "Confidential" for discovery purposes only, are ultimately either "public records" or "private records."

IT IS SO ORDERED.

DATED this 18th day of July, 2016.

*Electronic signature attached*

_____

Beth R. Andrus
King County Superior Court Judge

PROTECTIVE ORDER – 11

## EXHIBIT A

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the King County Superior Court in King County Washington on _____ 2016 in the case of *Freedom Foundation v. SEIU Healthcare NW Training Partnership,* Case No. 16-2-08924-1 SEA. I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the King County Superior Court in King County Washington for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

PROTECTIVE ORDER – 12

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

King County Superior Court
Judicial Electronic Signature Page

Case Number:      16-2-08924-1
Case Title:       FREEDOM FOUNDATION VS SEIU HEALTHCARE
                  NORTHWEST TRAINING PARTNERSHIP
Document Title:   ORDER PROTECTIVE ORDER

Signed by:        Beth Andrus
Date:             7/18/2016 9:00:00 AM

Judge/Commissioner: Beth Andrus

This document is signed in accordance with the provisions in GR 30.
Certificate Hash:          D92F76D12132FF531AF16720A721F097AC7A50B6
Certificate effective date: 7/29/2013 12:26:48 PM
Certificate expiry date:   7/29/2018 12:26:48 PM
Certificate Issued by:     C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
                           O=KCDJA, CN="Beth
                           Andrus:dE53Hnr44hGmww04YYhwmw=="

Page 13 of 13